Please all rise. Period, period, period. This Honorable Kelly Cork, from the 2nd Judicial District, is now back in session. Mr. Sojourner. The Honorable Michael J. Kersh, presiding. Please be seated. Your Honor, this is case number 9-2-16-0961. Michael K. Knuth and Jim Winters-Townes, from the Village of Antioch, have all been released. On behalf of the Winters-Townes, I refer you to Mr. Kenton J. Scree, on behalf of the Village of Antioch. You may be seated. Thank you, Mr. Gregory. You may be seated. Good morning, Justices. May it please the Court, Counsel. Andrew Kriegel, here on behalf of the Appellants Micah and Jill Knuth. I'm sure the Justices have read the parties' briefs, so I will limit my argument today to those facts and points I'd like to highlight. As you know, we're appealing a summary judgment order from the trial court of Wake County, which held that the plaintiff did not present sufficient evidence that he slipped on an unnatural accumulation of ice and that the village enjoyed the protections of tort immunity. It's the plaintiff's contention that there was sufficient evidence to show an unnatural accumulation of ice. First of all, Justices, the location of this occurrence is very important. The occurrence took place on the Raymond Chevrolet Incorporated property, specifically behind the Raymond Kia dealership. Wasn't it kind of a little vague as to the exact location where the fall took place? Yes, Your Honor. On appeal, are you offering two different theories as to how the ice that the plaintiff slipped on was formed? Specifically, are you claiming the ice was caused by either melted snow and that ice migrating down from the water tower? Or are you arguing that the ice was formed by snow blowing off the water tower? Which one? And if it's both, which? We believe it was a combination of both. Okay. So if you're claiming that the ice was due to the water migration, why in your briefs on appeal do you not acknowledge that the expert, your expert, Ben Ostrand, was unable to opine to a reasonable degree of certainty that the ice was due to water migration because the valley existed between the accident site and the water tower? I believe we addressed that he had, his opinion became that it was. He could not form an opinion to a reasonable degree of certainty, correct? Yes, Your Honor. Okay. And he changed that opinion subsequently to the theory of wind blowing snow and ice from the water tower. However, we believe that the facts presented from lay witnesses and deposition testimony still present evidence sufficient to show that this water, which refroze into ice, was from an unnatural accumulation melting from the water tower. Both Ben Ostrand and the plaintiff testified that a valley existed in the area behind the dealership building, correct? Correct, Your Honor. And Ben Ostrand understood that the plaintiff was walking on the far side of the valley from the water tower, right? Yes, Your Honor. And the plaintiff testified the valley laid where the pavement met the gravel, and he implied or actually he testified that he was on the gravel side of the valley, the side near the tower when he fell. Yes, Your Honor. How do you reconcile these apparent contradictions? Well, the exact location of the plaintiff's fall is in question. The plaintiff would obviously know the location of his fall better than Mr. Ben Ostrand, and without the lot had been repaved at some point, so it was very difficult to ascertain exactly where the occurrence exactly took place. With respect to the snow blowing from the water tower, what's your response to the village's claim that that theory was not advanced in opposition to summary judgment because you did not allege it in your First Amendment complaint? What's your response? Your Honor, I agree with the village's assertion there. It was not alleged in our first complaint. However, based on the fact that we believe there was sufficient evidence to show the water had melted from the water tower and migrated and reprosed where the plaintiff fell, that it should not make a difference. And why in your briefs on appeal don't you acknowledge that Ben Ostrand was unable to give an opinion to a reasonable degree of certainty that ice was formed by snow blowing from the water tower as opposed to snow falling from the sky in the days before the accident? There were additional snowfalls in the days before the accident. Yes, Your Honor. He could not form an opinion as to what was the cause, correct? Yes, Your Honor. In any of the cases that you cite in your brief, was there evidence of a natural source of accumulation such as in this case prior snowfalls? No, Your Honor. The cases cited in our brief deal with an unnatural accumulation which was aggravated by the defendant in some way. Well, in this case there were snowfalls, additional snowfalls, and your expert could not give an opinion. Yes, Your Honor, but we believe that due to the... There was then some judgment motion. Don't you think we have evidence that would be admissible in court such as an opinion to a reasonable degree of certainty? Yes, or there can be testimony from lay witnesses as long as there is a direct link, which I'm sure the Court is well aware of. We believe that testimony from the lay witnesses is enough, Your Honor. But that direct link relates specifically to the water melting from the tower and then flowing, not just blowing off. Yes, Your Honor. I mean, really, the snow blowing off the tower, the only person who mentioned that was the expert. Yes, Your Honor. So, I mean, really, you're kind of left with the water issue, correct? Correct, Your Honor. Okay. I'm going to go back to your expert and his deposition kind of putting forth this second theory. Was that objected to by the village at all, the fact that he's coming up with a new theory that wasn't previously disclosed and discovered? Your Honor, I do not believe so, but I have to review the record, and I can't speak to that with 100% certainty. But I believe what the village had asked was something to the effect of, are you going to come into court and give the opinion that this was caused from melting snow when that theory was presented? And then Mr. Benostrin answered, no, I will not. This is what I believe happened. However, based on the plaintiff's testimony that the area around the water tower was like nothing he had ever seen, like a lake, and concede the plaintiff says, you know, the gravel area was icy, but he further states that the area around the water tower was a lake. It was like nothing he'd ever seen before. That, coupled with the incident the day before the slip and fall injury with ice and snow melting from a water tower and landing on a car, and testimony from the plaintiff that his co-worker had told him there had been ice and snow melting from the water tower all day, and that's why it had been cordoned off. That, coupled with also Mr. Dave Hansen's deposition testimony that he had seen condensation running along the base of the water tower at times, he was aware there could be problems with falling ice and snow, and that he was also aware due to the grade of the water tower this condensation and water would flow down onto the abutment property. We believe that's enough to withstand summary judgment in this case. Didn't it, after it ran down and had a little valley there, a little dip, didn't it then have to run uphill for it to get onto the parking lot of the dealership? Yes, it would, Your Honor, but the property lines here were not readily apparent, and again, the exact location of this fall, slip and fall, was not readily apparent because the dealership, as you can see in, I believe it was Appendix 3 in our brief, had parked vehicles right around the water tower. So there were no property lines to differentiate the two properties, and again, the exact location of where this happened is up in the air, yes. Your reading of the plaintiff's deposition, is that the plaintiff acknowledged this valley that the expert spoke of, but that he was on the water tower side of the valley and not on the other side of the valley? I believe so, yes, Your Honor. And furthermore, we believe that the issue of tort immunity was improperly applied here because, as the court knows, every municipality has a duty to maintain its property with reasonable care. Having knowledge of the potential hazard created by ice and snow dripping from the water tower in winter months through its supervisor of water and sewer, the village should have known that this problem could have existed, and the fact that this incident occurred where a large chunk of snow or ice had fallen onto a car parked nearby the day before should have alerted the village to this potentially hazardous condition. As it relates to the issue that you plied regarding a duty to warn, is that not a discretionary act by the village officials? I don't believe so, because the village knew of this condition, so they either had a duty to remediate that dangerous condition or warn of that dangerous condition. If the village was unaware of this condition, there would be no duty, I agree. When you say unaware of this condition, you mean melting snow or falling snow? Both. The village was aware that snow had fallen the day prior, so I believe they had a duty to go investigate that and warn. So far we've been focusing on cause, if there's enough evidence to show approximate cause. Now we're talking about duty. So the village, what would the village be required to do? What burden would that place on the village? Every time there's a snowfall, they'd have to take some action, right? Courts have held municipalities liable for failing to remove unnatural accumulations that they have created. So I believe the case law speaks for itself there, Your Honor, that they would have a duty to remove that, warn of that, and especially when they were aware that the adjacent dealership was parking its vehicles around the water tower and using that property with, I would say, consent or permission. Was there evidence in the summary judgment record to show who cordoned the area off? That was the dealership who cordoned the area off. It wasn't the city? No, it was not, Your Honor. Although there was evidence that the city had told the dealership about this issue in the past. In the past, yes. But in Mr. Bake-Hanson's deposition testimony, he does not recall if he ever told the dealership in the months of January, February, and March, the year of the occurrence, to move the vehicles that were parked there. He also had often seen vehicles parked there and said he would ask them to move if they were in his way. I am paraphrasing that. But so there is testimony of it. Not a warning, just general conversation, move it so we can get in there. Yes. So based on those facts, the notice and the case law holding that municipalities have been liable for failing to remove unnatural accumulations, we believe there was a duty. And do the Justices have any other questions? No questions. Thank you. Elsie, you have the opportunity for a vote. Thank you. Ms. Green, you may proceed. Good morning. Ellen Green for Defendant Appleby Village of Antioch. May it please the Court. This is a very simple case. The plaintiff is alleging that he fell on ice behind a car dealership that formed from snow that somehow came from the water tower that was on the village property adjacent to the dealership. But what's missing here is any evidence from which a jury could conclude that this snow or this ice that formed on the area where he fell came from the village's water tower. There's no direct evidence linking the snow from the water tower to this patch of ice where he fell. And there's also no admissible expert testimony to provide some kind of causal link between the snow from the water tower and the patch of ice. There's evidence that ice fell on the cars the day before or sometime before, correct? Yes. Yes, there is testimony that, and we don't know how big a piece of ice, but it was the day before some piece of falling ice hit a car that was parked. But there's nothing to suggest that some ice fell in an area where the plaintiff fell and melted and then refroze. There's no link there. There's just, we don't even know if it was in the exact same location. You claim in your briefs that plaintiffs did not, in opposition to summary judgment, rely on a theory that ice was formed by snow blowing from the water tower because that theory was not alleged in the plaintiff's First Amendment complaint, amended complaint, correct? I believe they, we may have made that argument. It was not alleged in the complaint, but it was essentially argued in the summary judgment briefs. In fact, in his response to the summary judgment, he attached a copy of the Second Amendment complaint in the argument's address. So you made that argument in the law? That they couldn't raise it? Right. Oh, that's possible that they didn't allege it, but it was argued. And then he also, in the order granting our motion for summary judgment, the court denied them leave to file a Second Amendment complaint. That's not something that was argued on appeal, that that was any error in denying that, and that argument has been waived. Okay. But the facts essentially were addressed in the theories and the testimony of the expert regarding the blowing snow. In fact, Ben Ostrin, as I pointed out, testified in his deposition, and this is in the record of page 542, that he could not opine that the snow from the water tower, as opposed to snow from a natural snow event, caused the plaintiff's accident. That is an expressive mission on his part. The best he could say that if there was an unnatural accumulation, that may be where it came from. But he didn't testify as to any design defects in the water tower that would have caused that. All the plaintiffs were left with was speculation as to the cause of the ice formation, and the speculation couldn't support finding a liability against the village. In their report, he relied on two things as evidence. I mean, this is a lay witness testimony that's referring to that they allege support in unnatural accumulation. One was that this gravel area in which he fell was covered with ice, whereas an adjacent or abutting asphalt area was clear. And they called this area diabolically different from, you know, between the gravel area and the asphalt. But if you look at the page where they cite this testimony, this is the record at 748, the plaintiff testified that the paved part of the property, and I believe this was the dealership property, that it had been salted that day. And he also testified that there were grassy areas that were essentially frozen on the top, so that was slippery, and that the gravel area was icy. But even if this gravel area was icy, that there was no covering the grass and the asphalt was clear, well, this difference can't be attributed to anything that the village did. There's no, again, no causal link between a clear driveway that had been salted and an ice-covered gravel area. It still doesn't show that somehow, well, this ice in this gravel area came from the snow on top of the water tower. They iced the asphalt because of the snow that occurred during those days between the fall and the accident, correct? I'm sorry. Was it clear in the record when the asphalt area was salted? According to Plaintiff, I believe he stated that there had been salt trucks there. Perhaps he didn't say on the day. He said, quote, around the dealership, the paved part, it was all salted, you know, and there had been salt trucks there. And he also testified the blacktop was pretty well melted and cleared on the day. But he didn't say exactly when. When the salt was applied. We don't, well, if it was clear, it would be a reasonable inference that it was after the, sometime after. That's no event. Yeah, it's no event. Yeah, well, in those days, I think it was between the 1st and the 5th. But in any event, he didn't fall on the asphalt. I don't really see the relevance at all. He also makes a big deal about a piece of ice that fell the day before and this yellow tape that was placed around the perimeter of the water tower. This doesn't create an issue of fact as to whether the ice on which the plaintiff fell came from the water tower. The plaintiff here, he wasn't struck by falling ice. So it's really not relevant as to whether it came down, melted, and then reformed into ice. He also didn't testify that he fell in this area that had been roped off. At his deposition, and this is at 748, his testimony about this area was that it was kind of obvious. And he was only working here for one day. This was his first day on the job. It was kind of obvious this big yellow tape was crazy. Ice had fallen off the top of the tower and actually had gone into a customer's car, so then they taped it off to make sure it wasn't going to happen again. There were no cars underneath the tower anymore. Now, this isn't the area in which he fell. He testified that he fell when he was checking, walking between the cars to make sure they were locked up, you know, in the end of the day when he was working. So even if the ice fell from the tower the day before, there's no evidence connecting that falling ice with an accumulation of ice in the area in which he fell, in which the plaintiff's expert admitted that the source of the ice could have been just from a natural snow event. On this record, a jury could not conclude that the accumulation of ice was unnatural. Is there evidence, though, that the area from where the ice fell, the area around the water tower, sloped down to where the accident was? Yes, there was. And there's evidence that there was thawing and freezing? Yes, there were temperature variations. There had been snow, and then it was a little bit warmer. There's also evidence, and nobody disputed, that it kind of slopes down from where the water tower is. But the plaintiff's own expert admitted in his deposition that he couldn't tell, that the way it didn't, where he fell was not at the lowest point. If water runs down, it would have to sort of come back up again, maybe be so much water that it rose to the level and froze where he was. Did the plaintiff testify differently to that, though, as to where it happened in relation to the valley? It's, to me, unclear when you look at his testimony, you know, that exactly where he fell. But we don't even know exactly where he fell. And then his expert says, you know, in response to this question, are you going to get up at trial and say this water drained from the Antioch property due to the slope and grading to the accident site, and that is what caused plaintiff to fall? Can you sit here and say to a reasonable degree of architectural and scientific certainty that is what happened? The witness answered, I don't believe I can. So without even any expert testimony, there was nobody at the scene observing the fall, precisely where it happened, noting, you know, any photographs showing water flowing. There's nothing left but speculation, and that's not enough to impose liability on the village. And for that reason, we'd ask that the court affirm the grand assembly judgment that was entered on October 20th, 2016. Any further questions? Thank you. Thank you, counsel. Mr. Krieger with One Lion. Yes, Your Honor. Thank you. Counsel, I think what we're looking at, and you're dancing around a little bit, is just to hone in on, you know, the case law talks about concrete evidence or an evidentiary link between what you say is the cause and the accident. So give me this, what you see as the concrete evidence or the causal link between snow on the tower and your client falling. That causal link would be the incident in the day prior to the plaintiff's slip and fall injury, where ice and snow had melted from the tower. The testimony from the plaintiff that the area around the tower had been cordoned off due to the ice melting from the tower. In fact, the plaintiff testified, and it's at 750 in the record, the icy area around the water tower extended beyond the area that had been taped off onto the gravel area into the Raymond Inventory lot. Well, where that ice fell the day before, is that the same location where the plaintiff fell? No, it is not, Your Honor. How does that become the causal link then? Well, the area around the water tower slopes off in all directions onto the adjacent properties. So there was ice falling onto the car. And where was that? Okay, where was that car where the ice fell off and damaged it? Where was that car in relation to the location where he slipped and fell? On the opposite side or to the left or to the right? It's on clear right. It's unclear exactly where it was, but the car was not in the exact same location where the plaintiff fell. The car was parked, I'd say, almost immediately under the water tower for a large chunk of ice to fall through that window. However, when these large chunks of ice end up falling and melting from the water tower, they are going to land on that sloped surface and drain off in any direction that this slope takes that. And the evidence showed that the slope drained onto the abutting property. The testimony from the village water and sewer supervisor shows that he was aware that the condensation would drip from the water tower in these months, that there could be problems with falling snow and ice, and that due to the slope of the property, they would drain onto the abutting property. I believe that is the direct link of evidence here. Were there any further questions? I mean, for those reasons, we ask you to be first if court is rolling. All right. The court will close court counsel for the rest of the hearing today. The case will be taken under advisement. And we will do a recess for adjournment. Thank you.